# Elkins *v.* Bank of Henry.

*Bill to Declare a Mortgage Void and to Cancel Same.*

(Decided November 21, 1912.  60 South. 96.)

1. *Husband and Wife; Conveyance by Wife; Action to Set Aside; Burden of Proof.*—Where a wife seeks to have a mortgage cancelled and set aside because executed as surety for the husband the burden is upon her to establish its invalidity.

2. *Same; Surety for Husband.*—A wife may pay her husband's debts, or may give him her property, or may borrow money upon it and give the money to her husband, yet she cannot become surety directly or indirectly for his debts (section 4497, Code 1907); hence. a mortgage executed by the wife to secure an advance of money for the business of the husband, and to procure an extension of time for an indebtedness due by him, for which he remained liable, is invalid as an attempt to become his surety.

[Elkins v. Bank of Henry.]

3. *Equality; Practice.*—A court of equity searches the conscience and looks through to the substance of things and is not bound by their surface appearance.

APPEAL from Henry Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Sarah A. Elkins against the Bank of Henry to cancel a mortgage as a cloud on title and deliver it up because given as security for the debt of her husband. From a decree for respondent complainant appeals. Reversed and rendered.

P. A. MCDANIEL, for appellant. The wife was not present, no agency is shown and no act or conduct of the wife from which an inference can be drawn that she acquiesced in or ratified the acts of her husband.—*Warren v. Wagner,* 75 Ala. 189; *Martin v. Shipley,* 75 Ala. 447; *Tanner, et al. v. Hall,* 86 Ala. 305. The mortgage in this case was no more in legal effect than acknowledging that the debt of the husband was hers, in plain violation of the statute.—Section 4497, Code, 1907; *Horton v. Hill,* 138 Ala. 615. The debt still remained the debt of her husband.—*Allen v. Dickinson,* 1 Minor, 120. The evidence discloses an attempt to do indirectly what could not be directly done. Equity looks at the substance of things, and not at surface appearance.— *Richardson v. Stephens,* 122 Ala. 301; *McNeil v. Davis,* 105 Ala. 457; *Henderson v. Brunson,* 141 Ala. 674.

ESPY & FARMER, for appellee. The burden of proof was on the wife and under the evidence in this case the burden was not borne by her and her bill was properly dismissed.—*Grayson v. Dubose,* 52 South. 923; *Campbell v. Hughes,* 155 Ala. 599; *Gibson v. Wallace,* 147 Ala. 222; *Mohr v. Griffin,* 137 Ala. 456; *Lunceford v. Harrison,* 131 Ala. 252; *Hollingsworth v. Hill,* 116

Ala. 184; *Glidden v. Powell*, 108 Ala. 621; *Gafford v. Speaker*, 125 Ala. 498; *Sample v. Guyer*, 143 Ala. 615. As to how the evidence of Mr. and Mrs. Elkins should be regarded attention of the court is called to the remarks of Judge STONE in *Miller v. Marks*, 55 Ala. 239.

DE GRAFFENRIED, J.—Sarah A. Elkins filed this bill in the chancery court of Henry county against the Bank of Henry, a corporation, for the purpose of having cancelled, as a cloud upon the title to certain of her lands, a certain mortgage which she, with her husband, D. M. Elkins, executed and delivered to said bank on the 12th day of March, 1908. The mortgage was duly executed by the wife, with her husband, on said day, to secure a note for $1,535.96, which matured on October 1, 1908, and in which it is recited that the wife made the note as principal, and that the husband signed the same as her surety. The bill alleges that the mortgage was executed by the wife, not to secure the payment of her own debt, but to secure a debt of the husband, and that, therefore, the mortgage was void under the provisions of section 4497 of the Code of 1907, which declares that "the wife shall not, directly or indirectly, become the surety for the husband.' The burden of proof was upon the wife to establish the invalidity of the mortgage.—*Interstate Bank v. Wesley*, 178 Ala. 186, 59 South. 621.

The facts are that D. M. Elkins, the husband, was, at the time of the execution of the mortgage in question, indebted to the Bank of Henry in the sum of over $4,000. A part of this indebtedness, viz., $1,033.99, was evidenced by a note of said D. M. Elkins, which matured on January 1, 1908, and which was secured by a mortgage on certain personal property. No part of this indebtedness had been paid when the mortgage in ques-

tion was executed and delivered, and whether the Bank of Henry had ever called upon D. M. Elkins for its payment or the payment of any part of it the evidence does not disclose.

In order that the contention of the appellee as to the manner in which the indebtedness of the appellant was created and the mortgage in question executed may be apprehended, we quote the following from the evidence of A. S. Steagall, president of said Bank of Henry: "A few days prior to said date I had two conversations with D. M. Elkins, husband of the complainant. In the first one he said that complainant wanted to borrow from the bank enough money *to take up* the first purchase-money note that he owed the bank on the Bradley land, which was then $1,066.03. A day or two later he came back and said that, in addition to the amount it would take to pay the Bradley note, *he* would need about $300 in *his* business, and *we* want to borrow that amount also, and to secure said sum she would give a mortgage on the house and lot involved in this suit. I then instructed O. M. Steagall to prepare a mortgage for said sum of money, with interest, on the land involved in this suit, and have her to execute it, if she in fact wanted to borrow the money. * * * Mrs. Elkins was not present at either of the conversations that D. M. Elkins and myself had about this transaction."

O. M. Steagall appears to have prepared the papers as directed by the president of the bank, and to have taken them to appellant for her signature. On that subject, O. M. Steagall, who was the cashier of the bank, says: "I carried said mortgage and the note it was given to secure to the home of complainant. When I got there, I told her that A. S. Steagall said that she wanted to borrow from the bank $1,366.03 and give a

mortgage on her property to secure the same. She said she did want to borrow this amount of money from the bank. * * * I then asked her what she wanted done with the money that she borrowed on this mortgage. She told me to take $1,066.03 and apply to the purchase-money note of her husband, and place the other $300 to the credit of her husband." When O. M. Steagall took the note and mortgage to appellant for her signature, the president of the bank knew what was to be done when the note and mortgage were delivered to the bank, properly signed and executed. He knew that the amount for which he had directed that mortgage to be prepared was a sum exactly sufficient to cover the amount *then* due by D. M. Elkins on the note to which we have above referred and the other $300 which D. M. Elkin had informed him *he* needed in his business. The bank, when Mrs. Elkins signed the note and mortgage, may have desired her express directions about the matter; but it already knew, without her directions and without regard to the above conversation with O. M. Steagall, exactly what was to be done.

While the above testimony offered on behalf of the bank was in many vital ways contradicted by the testimony of Mr. and Mrs. Elkins, and while the testimony of Mr. and Mrs. Elkins, if true, established beyond cavil that the note and mortgage in question were given by Mrs. Elkins as surety for her husband, and in that capacity only, we think the above-quoted evidence, taken in connection with the situation of the parties and the evident purposes for which the note and mortgage were executed, satisfactorily establishes the validity of Mrs. Elkins' claim. A court of equity searches the conscience, and "looks through to the substance" of things. The substance of this matter was that, when the note of appellant and her mortgage, signed by both herself

and her husband, D. M. Elkins, were delivered to appellee, D. M. Elkins was still bound for the *debt*. The time for its payment had been extended, and appellant and her land, but for the statute above referred to, were also bound, not only for its payment, but for the payment of $300 more, which D. M. Elkins had informed the bank *he* would need in *his* business.

We recognize the fact that a wife may pay her husband's debts, that she may give him her property, and that she may borrow money and give it to him; but the statute above quoted prohibits her from becoming a surety, directly or indirectly, for his debts. In this case there was a plain effort to evade the statute, and this case is completely covered by the rule declared by this court in *Lamkin v. Lovell*, 176 Ala. 334, 58 South. 258. It is our conclusion, therefore, that appellant is entitled to the relief prayed for in her bill of complaint filed in this cause. The decree of the court below is therefore reversed, and a decree is here rendered canceling said mortgage as a cloud upon the title of appellant to the lands described in the bill of complaint.

Reversed and rendered. All the Justices concur.