# Corinth Bank & Trust Co., *et al. v.* King.

## *Bill to Cancel Mortgage Because Security for Husband's Debt.*

(Decided June 10, 1913.　62 South. 704.)

1. *Husband and Wife; Common Law Powers of Married Women.*—A married woman was without legal capacity to contract or bind her legal estate in lands by mortgaging them, under the common law.

2. *Same; Conveyance by Wife; Burden of Proof.*—Where a married woman seeks to set aside a mortgage because executed to secure her husband's debt, she has the burden of proving those allegations.

3. *Same; Evidence.*—The evidence examined and held to show that the mortgages executed by the wife were executed as security for the debt of her husband, contrary to the statute.

4. *Evidence; Presumption; Common Law.*—It will be presumed that the common law still prevails in states known as the common law states, in the absence of evidence of the law of that state.

5. *Common Law; States.*—Mississippi is a common law state.

6. *Contracts; Construction; Of Parties.*—Where all of the parties to a contract executed in a foreign jurisdiction treated the contract as a domestic contract, the courts will so treat it.

APPEAL from Colbert Chancery Court.

Heard Before Hon. W. H. SIMPSON.

Bill by Lida C. King against the Corinth Bank & Trust Company, and others, to declare certain mortgages void because given as security for her husband's debt, and to cancel same.　Decree for complainant and respondents appeal.　Affirmed.

KIRK, CARMICHAEL & RATHER, for appellant.　Counsel discuss the evidence with the insistence that it makes a very different case from that of *Elkins v. Bank of Henry,* 60 South. 96, and that under the authority of *Hollingsworth v. Hill,* 116 Ala. 184, and *First Nat. Bank of Gadsden v. Moragne,* 128 Ala. 161, and *Sample*

*v. Guyer,* 143 Ala. 615, the chancellor was in error in his conclusion, and the cause should be reversed and remanded. They further insist that the wife having executed and delivered the mortgage to her husband to be used in obtaining money from the bank, is therefore estopped from denying its validity.—*Henderson v. Brunson,* 141 Ala. 674; *First Nat. Bank v. Nelson,* 106 Ala. 534; *Vincent v. Walker,* 95 Ala. 165; *Harden v. Darwin,* 77 Ala. 472. Money obtained on the credit of the wife, and on her individual property as security, is valid.—*Grayson v. DuBose,* 168 Ala. 379; *Sample v. Guyer, supra; Hamill's Case,* 127 Ala. 90.

JAMES H. BRANCH, and W. P. CHITWOOD, for appellee. It is settled in this state that a wife cannot become directly or indirectly a surety for her husband.—Sec. 4497, Code 1907; 6 Mayf. 447. The only question presented is whether or not the wife signed and executed the mortgages as surety for her husband, and under the evidence, it is plain that she did, and that the bank was chargeable with notice of her suretyship.—*Continental Bank v. Clark,* 117 Ala. 292; *Richardson v. Stevens,* 122 Ala. 301; *Price v. Cooper,* 123 Ala. 392; *Elkins v. Bank of Henry,* 60 South. 96. The agency of the husband must be shown by clear and convincing evidence, and is not presumed.—*Louisville C. Co. v. Stokes,* 76 Ala. 372; 21 Cyc. 1239-40. Parol evidence was admissible to show that the wife was neither an original nor a joint debtor.—*Vincent v. Walker,* 93 Ala. 165; *Harden v. Darwin,* 77 Ala. 477. A void thing cannot be galvanized into life by the application of the doctrine of estoppel. —*Russell v. Peavey,* 131 Ala. 567, and authorities cited.

DE GRAFFENRIED, J.—Lida C. King filed this bill for the purpose of having canceled as clouds upon her

title two mortgages which she executed upon certain of her lands. One of these mortgages was made to the Corinth Bank & Trust Company and the other to the Tishomingo Savings Institution. Mrs. Lida C. King when she executed the mortgages was and is now a resident of Colbert county, Ala., and the lands mortgaged by her are situated in said county, and they are now and were when she filed this bill, in her possession. Complainant is a married woman, the wife of Bruce King, and she claims that the mortgages were executed to secure, not her debts, but debts of her said husband. In other words, that when she signed the notes evidencing the debts, and when she executed the mortgages to secure them, she did so, not as the principal debtor, but only as the surety of her husband.

1. The evidence in this case clearly shows that, while the notes and mortgages were signed and acknowledged in Alabama, the entire transaction took place in the state of Mississippi. The debts were also, by the terms of the notes, *payable* in Mississippi.

At common law a married woman was without legal capacity to contract or to bind her legal estate in lands by mortgaging the same.

We have, in evidence in this case, no statute of the state of Mississippi, and the presumption, in the absence of evidence to the contrary, is that in Mississippi the common law prevails.

That state belongs to that class of states which are known as the common-law states of the Union.

The complainant, and all the parties to this cause, treated these contracts as Alabama contracts, however, and we will so treat them.

2. The sole question, therefore, for us to determine is whether the complainant, when she signed the notes and

mortgages, did so as the surety of her husband, or whether she did so as the principal debtor.

Complainant alleges that the contracts were contracts of suretyship, plain and simple, and upon that allegation she places her right to relief. The burden is upon the complainant to establish this essential allegation of her bill.

3. The note to the Tishomingo Savings Institution was signed by three people, viz., Bruce King, the husband, Lida C. King, the wife, and Robert King, the father of Bruce King, and in the order named. It is admitted that Robert King was a mere surety on this note, and, if Bruce King was in fact the principal debtor and Lida C. King and Robert King were his sureties merely, then the signatures on the notes appear in the order in which we would naturally expect them to appear.

The note of the Corinth Bank & Trust Company is signed by Bruce King and Lida C. King, and their names appear upon the note in the order named. If complainant was a mere surety on the note, then her name appears on the note in the place where we would expect it to appear.

4. When the notes and mortgages were delivered to the respective banks, the *money* was placed by each bank, not to the credit of Lida C. King, but to the credit of Bruce King, and in *each* instance this was done by the *direction* of Bruce King and *not* by the direction of Lida C. King. The money was *checked out* of each bank by Bruce King and not by Lida C. King. All this would naturally have occurred if Lida C. King had been, as she claims, a mere surety. These collective facts certainly give color to the claim of complainant that she was a mere surety and that she did not, as principal, borrow the money and *give it* to her husband. If the

money had been placed to her credit or if she had given personal instructions to the bank to pay the money to Bruce King, the mere disposition of the money might not be of much value to complainant as an aid to her in making out her case.

5. As to the manner in which the debt to the Corinth Bank & Trust Company originated, we quote the following from the testimony of an officer of that bank: "Bruce King had been doing business with the bank and I refused to let him get indebted to the bank unless *he would give me security*. He had been after me for some time to let him have some money and I refused to let him have it unless he would secure the same, so he came to see me in person and told me that his wife was willing to give a mortgage on her property in order *for him to get the money,* and I told him that he could then get the money when the papers were fixed up. Mr. King told me at the time that this property that his wife was going to put up was her property and was hers before he married her, but she was willing to put it up in order to help him get the money and would do so if I would let *him* have the money. Mr. King was at this time in a very straightened financial condition and under no circumstances would I have let him had the money unless he had given this security or other security equally as good." While in other parts of his deposition this officer of the bank says the loan was made to complainant, the above frank statement which we have copied from his deposition clearly stamps the transaction as a mere loan to the husband with the wife as his surety.—*Elkins v. Bank of Henry,* 180 Ala. 18, 60 South. 96.

6. The officer with whom Bruce King conducted the negotiations which resulted in the execution and delivery of the note and mortgage to the Tishomingo Sav-

ings Institution is not as frank in his statements as to the manner in which and the purposes for which complainant's signature was obtained to *that* mortgage as is the above-quoted statement of the officer of the Corinth Bank & Trust Company. A careful consideration of all the evidence in the case convinces us that when *that* mortgage was executed and delivered it was intended and understood by all the parties to be, however, a mere pledge on the part of the wife of her lands to secure a debt of her husband.

This our statutes declare a wife cannot do.—*Elkins v. Bank of Henry, supra.*

The decree of the court below is affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.