(75 South. 301)

BANK OF COFFEE SPRINGS v. AUSTIN. (4 Div. 695.)

(Supreme Court of Alabama. April 26, 1917.)

1. HUSBAND AND WIFE ☞169(12) — WIFE'S SEPARATE ESTATE — MORTGAGE FOR HUSBAND'S DEBT.

Where wife's property has been mortgaged by her with her husband to secure the husband's debt, the fact that the proceeds of a subsequent mortgage on the same property are used in payment of the first mortgage does not affect her right to have the subsequent mortgage canceled as having been given to secure her husband's debt.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 668, 949, 951.]

2. HUSBAND AND WIFE ☞169(10) — WIFE'S SEPARATE ESTATE — MORTGAGE FOR HUSBAND'S DEBT—ESTOPPEL.

The fact that a wife intrusted to her husband for recording a deed made to her alone, which, without her knowledge, he changed before recording by inserting his name also as grantee, and that she with her husband mortgaged the deeded property, making no representations, did not estop her from suing to cancel such mortgage as given for her husband's debt.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 669, 702, 949, 951.]

Appeal from Chancery Court, Geneva County; O. S. Lewis, Chancellor.

Bill by Adelia Austin against the Bank of Coffee Springs. From decree for complainant, respondent appeals. Affirmed.

Bill by the appellee, a married woman, for the cancellation of a mortgage executed by her husband, O. C. Austin, and herself, on a certain 40 acres of land in Geneva county, to secure the debt of the husband—alleging that the complainant was the owner of the entire fee-simple title to the said 40 acres involved, but if mistaken in this, that she owned an undivided one-half interest therein.

The mortgage sought to be canceled bears date September 29, 1910, and is to secure the sum of $253.50. The answer denies that the mortgage was given to secure the husband's debt, but avers that it was the joint debt of the husband and wife. It also alleges that the wife was the owner of only one-half of the undivided interest in the 40 acres of land; that in any event, the proceeds of the mortgage were used by O. C. Austin in the payment of an outstanding mortgage which he and his wife, the complainant, executed on October 5, 1909, to one J. W. Bynum, on the lands here in controversy, and which said mortgage created a cloud on her title, and therefore the money was used for the benefit of the said Austin, and the payment of the said outstanding mortgage to Bynum. The answer further avers that the transaction here involved was the loan of money, and at the time of the execution of the papers at the bank the respondent had in its possession a certified copy from the record of the probate office of the deed to the lands described as shown by the said record, and which certified copy disclosed that the land was owned by O. C. Austin and complainant jointly, and that at the time of the execution of the mortgage here in question complainant was present and respondent had said certified copy of the deed in its possession, and that the complainant claims the lands under a deed from her mother, Mrs. M. C. Foxhall, which deed was purported to be recorded, and the original of which complainant claims is lost; that complainant did not inform respondent that any change had been made in the deed before it was recorded; that complainant was charged with the notice of the contents of the record, and was under duty to inform respondent of any change made in the deed; that complainant now claims that the deed was executed to her solely, the name of O. C. Austin not appearing therein at all, and that she kept the deed and delivered same to her husband to be recorded, and before its recordation the said original deed was changed by inserting O. C. Austin's name as grantee—as to all of which the complainant had no notice; that respondent acted in good faith, relying upon said certified copy of the deed as disclosed by the record. It is then

alleged that complainant is now estopped to claim full ownership of said land, and that if a change was made in the deed, it was made as a result of complainant's delivering the deed to her husband to be recorded, and that she should therefore bear the consequences.

Upon submission of the case for final decree the chancellor held that the debt was that of the husband, and that the wife owned the entire title, and granted the relief prayed. From this decree the respondent prosecutes this appeal.

W. O. Mulkey, of Geneva, for appellant. C. D. Carmichael, of Geneva, for appellee.

GARDNER, J. [1] That the mortgage executed by the complainant (appellee here) was for the security of the debt of her husband, O. C. Austin, is entirely clear from the evidence in this record, and indeed, as we understand brief of counsel for appellant, is not a question seriously controverted on this appeal. It is also, we think, equally clear that the mortgage of complainant and her husband to one Bynum, including the same land and executed the year previous to the mortgage here in question, was for the purpose of securing the debt of the husband. The Bynum mortgage therefore stood on no higher plane than the respondent's, and the fact that the proceeds of the mortgage here in question were used in payment of the Bynum indebtedness is therefore without influence on complainant's right to relief.

Complainant acquired the 40 acres involved as a gift from her mother, and insists that the deed was executed by her alone; that after its execution she kept the deed in her trunk for several years; that when her husband called for it for the purpose of having it recorded she delivered it to him, and that upon his return from Geneva—a distance of ten miles from their home—he insisted that he had lost the original deed, but that a copy could be secured from the record any time it was needed; that she was not aware of any change made in the deed by the insertion of the name of her husband before its recordation, nor suspected any such change at the time of the execution of the mortgage to respondent, and only learned of it since the death of her husband; that she had no part in the transaction here involved, except to sign the mortgage when requested. It would serve no useful purpose to enter into a discussion of the evidence in this case. Suffice it to say that upon a most careful examination of the record, we are fully persuaded that the deed of the mother was made to the complainant alone, and at the time of its execution and delivery to the husband for recordation in the probate office the name of the husband did not appear therein.

[2] It is earnestly insisted, however, that the complainant intrusted the custody of the deed to her husband for the purpose of having it recorded, and thus put it into the power of the husband to practice a fraud upon the respondent, and that complainant should therefore suffer the loss, citing Allen, Bethune & Co. v. Maury Co., 66 Ala. 10, among other authorities. The deed was recorded about two years prior to the execution of the mortgage here in question, and the evidence tended to show that it was delivered to the probate judge, recorded, and then delivered back to the husband, all on the same day.

We are fully persuaded that the wife knew nothing of the change made in the deed, and was aware of no fact which would place her on notice of any such change, and was ignorant of the same at the time of the execution of the mortgage. She had no occasion, whatever, to suspect that her husband would do anything other than the simple delivery of the deed into the probate office to be recorded. She not only has been guilty of no wrong herself, but had no notice or intimation that a wrong had been perpetrated by another. We are therefore persuaded that the principle invoked by the appellant's counsel cannot be so far extended as to embrace the situation thus disclosed. The facts in the case of Allen, Bethune & Co. v. Maury Co., supra, are not analogous to those here presented, and we are of the opinion that case does not at all militate against the conclusion here reached. The principle sought to be invoked is in the nature of an equitable estoppel, and it clearly cannot be said that the complainant in merely delivering the deed to her husband at his request to be recorded has thus armed him with power to impose upon a third party so as to give rise to any equitable estoppel as against her.

We are persuaded that complainant took no part in the transaction here involved, except in rather a perfunctory manner, in signing the mortgage with her husband, and that she was ignorant of any change having been made in the deed, and made no representations whatever. Clearly, therefore, there could be no estoppel by her conduct. We conclude, therefore, that the decree of the chancellor is without error, and it is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.