6 So.2d 597

## CITIZENS BANK OF MOULTON v. BURKS.

### 8 Div. 133.

Supreme Court of Alabama.

Feb. 12, 1942.

Rehearing Denied March 19, 1942.

J. Foy Guin, of Russellville, and Henry D. Jones, of Moulton, for appellee.

R. L. Almon, of Moulton, and Peach & Caddell, of Decatur, for appellant.

GARDNER, Chief Justice.

Complainant, the wife of J. R. Burks, is the owner of certain described real estate situated in Lawrence County, Alabama, and in October, 1938, filed this bill to have cancelled and annulled a mortgage bearing date of January 13, 1926, executed by herself and husband to the defendant, The Citizens Bank of Moulton, embracing this realty. The mortgage was given to secure a note signed by complainant and her husband of even date (the wife signing first), which note was renewed from year to year in varying amounts, but no additional mortgage was executed, the original mortgage expressly providing that it shall "stand as a security for all renewals of this debt".

The annulment of this mortgage was sought upon the theory the debt was that

of the husband and the wife had become surety therefor in violation of § 74, Title 34, Code 1940.

■ Upon consideration of the cause for final decree on pleadings and proof, offered by way of depositions, the chancellor granted the relief prayed and ordered the mortgage cancelled. From the decree rendered the defendant bank has prosecuted this appeal.

"'Surety' for the debt of the husband implies a pre-existing debt, or a contemporaneous debt for which he becomes bound as principal and the wife, or her property, bound as security". Daniel v. Cummings, 231 Ala. 509, 165 So. 756, 757.

Complainant's contention in this case comes within the latter category, that is, a contemporaneous debt of the husband as principal, for which the wife pledged her property as security. Admittedly there was no pre-existing debt of the husband.

The transaction was a straight out loan of $2,000, with deposit slip made out to J. R. Burks, the husband, and by him checked out the following day. The purpose was to secure for the husband funds with which to purchase an one-third interest in a mercantile firm in Moulton, in which he had previously been employed. The money was so used and J. R. Burks acquired such interest and his name added to that' of the firm as an equal partner. In course of time the venture proved unsuccessful and the partnership failed. This firm was in no manner indebted to defendant bank. The bank does not appear to have previously done any business with complainant or her husband, and its only advantage in the transaction was embraced in the matter of interest on the money loaned.

■■ Upon its face the mortgage and notes indicate a joint liability of husband and wife, and under all the authorities the burden of proof rested upon complainant. McDaniel v. Mellen, 223 Ala. 181, 134 So. 873; Marbury Lumber Co. v. Woolfolk, 186 Ala. 254, 65 So. 43. That the bank acted in perfect good faith in this transaction cannot be questioned, and the intention of the parties at the time of the loan is a controlling factor. Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663.

■ Of course the wife had a right to borrow the money and give the proceeds to the husband for this business venture. Daniel v. Cummings, supra. On the part of complainant the case turns largely upon the testimony of the husband, J. R. Burks, who states that he told Brackin (the president of the bank) that he wanted to borrow some money to buy an interest in a partnership and would give as security "a mortgage on my wife's land". Brackin agreed and referred him to Mr. Weatherwax, the cashier, who prepared the papers and who insists he went to the home to have the same executed, taking Downing the notary along. Interested witnesses deny that Weatherwax was present. But we are persuaded he spoke the truth, that he was present and that this complainant told him on that occasion "she was borrowing some money to help him get into business". Weatherwax says the bank officials were more careful when the loan was to be made on property of the wife. He had not been connected with defendant bank for several years previous to this litigation, and so far. as we can see was wholly without any interest in the outcome.

Brackin knew the property was that of the wife. The proof discloses she was more or less an invalid and the husband attended to what little business affairs she had. Asked on direct examination whether the debt was his or that of his wife, he answered, "In a sense it was mine". Had he used the plural "we" instead of "I" in his approach to Brackin, a joint debt would have been indicated, and we think such in fact was the situation.

As noted in that excellent work in pamphlet form known as "Wife as Surety for Husband" by Albert J. Pickett, Jr., the rule prohibiting the wife from becoming surety for the husband's debt first became a part of the statutory law of this State in 1887, and it is entirely reasonable to assume that any business man with sufficient capacity to hold the office of president of a bank was well aware of this statutory inhibition. And yet the husband's testimony is to the effect that Brackin, the president, with full knowledge of the ownership of the property in the wife, unhesitatingly agreed to a loan, to the husband as principal, of $2,000 with a mortgage on the wife's property as sole security therefor. Brackin died in 1932, many years before any question as to the validity of the mortgage arose, for, as we have previously noted, renewal notes were being executed from year to year without any question being raised throughout all of this long period of time concerning the binding effect of this transaction. ·Nor was

it questioned when the wife made effort to secure a loan through the federal agencies with which to pay this indebtedness. And we think husband and wife fully understood each other in this matter when this loan was made. She knew he desired to make this investment. They had evidently talked the matter over.

It is clear enough he had no sufficient security to offer. They were evidently hopeful of the business venture and as to making the mortgage she says he told her "we would have to do that to get money for him to go into business. * * * He just told me that he was going to do business. I knew we didn't have money. He knew that, I knew it, and we needed a mortgage on the place."

She says she gave the mortgage so that he might get the money. Whether she gave any particular directions as to a deposit in the name of the husband is a matter of doubt. Such perhaps was tacitly understood. The money was for the husband for a particular use and she knew it was so intended and so used.

Here, as in Bell v. Farmers' National Bank, 214 Ala. 211, 106 So. 851, 852, "the fund went to the husband for his own free use in the conduct of his own business", just as the wife fully understood and agreed. But we forego further discussion of the facts.

Counsel for complainant directs attention to several of our cases which they consider pertinent (among them, Delony v. O'Reilly, 235 Ala. 386, 179 So. 207; Dewberry v. Bank of Standing Rock, 227 Ala. 484, 150 So. 463; Kimbrell v. Simpson, 216 Ala. 293, 112 So. 903; Bank of Coffee Springs v. Austin, 201 Ala. 10, 75 So. 301; Corinth Bank & Trust Co. v. King, 182 Ala. 403, 62 So. 704; Elkins v. Bank of Henry, 180 Ala. 18, 60 So. 96), which have been read and considered with care. But as observed in Gibson v. Wallace, 147 Ala. 322, 41 So. 960, 961: "No two cases are exactly alike, and hence, other decisions on different facts and circumstances, are of little assistance, in reaching a correct conclusion in new cases as they arise. The question at last is whether, notwithstanding the form of the transaction, the wife was attempting to secure a debt entirely her husband's, upon which she was not bound either separately or jointly." And illustrative is Delony v. O'Reilly, supra, upon which counsel lays much stress, but when examined is found to be very different in its facts.

There is no controversy as to any legal question involved. The decision turns upon the proper interpretation of the evidence as to the facts, the court always looking through form to substance, and bearing in mind the burden of proof resting upon the complainant.

 So considered, we are persuaded complainant has failed to sustain this burden and that the decree erroneously granted relief of cancellation of the mortgage.

As a plan to re-finance this indebtedness, complainant signed a deed to her son, Puritt Burks, who was to obtain a loan. She insists this deed was never delivered and the decree likewise annulled this deed. There is no assignment of error argued here as to that part of the decree and it will stand affirmed.

But in so far as the decree annuls the mortgage to defendant bank of January 13, 1926, it is reversed and a decree here rendered denying complainant relief in this regard.

Affirmed in part and in part reversed and rendered.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.