HOLMES, Judge.
This is an unjust enrichment case.
The defendant sold a herd of cattle to a third party and then refused to compensate the plaintiff for “pasturing” the cattle upon his land.
The plaintiff sued the defendant. In finding for the plaintiff, the trial court concluded that, “[bjased on the entire evidence and circumstances, the Court finds that equity is done by obligating [the defendant] to pay [the plaintiff] and then look to his [i.e., the defendant’s] nephew for reimbursement.”
The defendant appeals, and we affirm.
Several issues are raised on appeal, none of which appear to address the dispos-itive question posed by this case. Notably, the dispute over whether the plaintiff had a lien on the cattle pursuant to Ala.Code (1975), § 35-11-70, seems to us to ignore the basic facts. The livestock in question had been removed from the plaintiff’s land prior to the plaintiff’s bringing suit. We cannot read § 35-ll-70(a) to give an enforceable lien to the plaintiff in this case where the stock is no longer in his possession and where he has not complied with the “perfection” provision of the statute as set out in § 35-ll-70(b). Neither party asserts that the statute was in fact complied with so as to create an enforceable lien against the defendant.
Similarly, the dispute over the application of the principle of equitable estoppel to the facts at bar seems to us to miss the more dispositive question of whether the defendant was unjustly enriched as to provide a remedy in equity for the plaintiff.
We phrase the dispositive issue, therefore, as whether the defendant was unjustly enriched to the detriment of the plaintiff such that equity demands the repayment by the defendant of the plaintiff’s loss.
We note at the outset that a court of equity searches the conscience, looks through to the substance of things, and is not bound by their surface appearance. Elkins v. Bank of Henry, 180 Ala. 18, 60 So. 96 (1912). That is, in equity jurisprudence a court may look through form to substance so as to leave no right without a remedy. Warner v. Warner, 248 Ala. 556, 28 So.2d 701 (1947).
With that fundamental principle in mind, we find that the record reveals the following pertinent facts.
The plaintiff leased some pasture land upon which he desired to graze other parties’ cattle at a profit. He sought and obtained a contract with the defendant’s nephew, whereby the nephew would pasture cattle on the plaintiff’s land. The contract provided that the nephew would pay the plaintiff an amount based on the weight gain of the cattle at the time they were sold. The deféndant was not a party to this contract.
The nephew sought and obtained a loan from his uncle, the defendant, to finance the purchase of the cattle that would be pastured on the plaintiff’s land. At that time the nephew was currently indebted to the defendant for the prior financing and purchase of some five hundred steers. With the additional financing provided by the defendant, the nephew purchased approximately two hundred more head of cattle, which were placed on the plaintiff’s land to be fattened up for market.
The plaintiff was well apprised of the defendant’s participation in the financing end of the nephew’s deal with the plaintiff. In fact, the plaintiff knew, as did stockyards in the area, that the name “Sain,” under which the cattle in this case were purchased, was a name that both uncle and nephew used in contracts for other purchases of cattle.
The defendant also participated in the occasional dealings between his nephew and the plaintiff regarding the daily care and feeding of the cattle in question. For instance, when the purchase of feed for the cattle became necessary, the defendant purchased approximately $1,200 worth of feed from the plaintiff. In addition, at one point the plaintiff went with the nephew to the defendant’s farm to pick up three feed *50 ers that would be used to feed the cattle on the plaintiff’s land. The defendant helped the plaintiff load these feeders to be transported to the plaintiffs land. Further, when the cattle were originally delivered to the plaintiff’s land, the various invoices and tickets presented at that time showed that the cattle were purchased not only in the name of “Sam,” but also in the name of James Ozment, that is, the defendant. Moreover, the cattle were branded with an “0” on the left hip, which was the brand of the defendant.
The cattle were paid for on checks written by the defendant. After the cattle had been pastured on the plaintiff’s land for several months, the defendant went onto the plaintiff’s land accompanied by a potential buyer of the cattle. The defendant eventually entered into a contract with this buyer for the sale of the cattle. Thereafter, more than half of the cattle were delivered by the defendant and the plaintiff to the stockyard. At the stockyard in the presence of both his nephew and the plaintiff, the record shows that the defendant stated words to the effect that he would straighten the business up after all the cattle were delivered and sold. The plaintiff subsequently permitted the defendant and his nephew to remove the remaining cattle from his land.
The controversy in this case arises over the fact that the nephew went into bankruptcy without fulfilling the terms of his contract with the plaintiff. Although some money was paid to the plaintiff for his pasturing of the cattle, he sued the defendant for approximately $8,500, which he claimed was the amount due him for the aforesaid pasturing. The trial court ruled in the plaintiff’s favor.
The defendant appeals, contending in effect that he is not liable to the plaintiff since he had no express contract with the plaintiff and since he was not subject to an enforceable lien. We disagree.
In Opelika Production Credit Association, Inc. v. Lamb, 361 So.2d 95 (Ala.1978), Justice Shores related the history of “[t]he theoretical underpinnings of a quasi-contractual recovery” and concluded as follows:
“The remedy of quasi-contract is founded upon the familiar principle of avoiding unjust enrichment. Where the plaintiff has suffered a detriment, and the defendant has received a benefit as a result, it is said that justice demands the repayment by the defendant of the plaintiff’s loss.”
Lamb, 361 So.2d at 99.
Earlier in that case the following was stated:
“A person may be considered to have conferred a benefit upon another if he has given him possession of, or an interest in, land, chattels, or choses in action, or if he performs some service which is beneficial to or at the request of the other person, or if he satisfies a duty on a debt of the other. Whenever one person adds to the other’s advantage in any form, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other.”
Lamb, 361 So.2d at 99 (citations omitted).
More recently, the supreme court stated that “[t]he essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plain-tiff_” Hancock-Hazlett General Construction Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986).
Clearly, in this case it was the pasturing on the plaintiff’s land that led to a gain in weight of the cattle and their subsequent sale by the defendant. We find that the defendant realized a benefit at the plaintiff's expense under the facts of this case. As such, the defendant was unjustly enriched to the detriment of the plaintiff. Equity demands that there be a remedy for this set of events.
The record is replete with evidence that the defendant was the owner of the cattle in question. In a word, he bought and sold them under his name. He would not have realized a benefit in this case but for the care and feeding the cattle received while being pastured on the plaintiff’s land.
*51 This case was presented ore terms. Under the applicable standard of review, the trial court’s judgment cannot be altered on appeal if it is supported by legal evidence unless the trial court’s decision was palpably wrong. Sayles v. Sayles, 495 So.2d 1131 (Ala.1986). We find no such palpable error. The trial court’s conclusion that equity requires a judgment for the plaintiff in this case is supported by the evidence.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur.