171 So. 640

**NOEL et al. v. TUCKER.**

5 Div. 239.

Supreme Court of Alabama.

Nov. 27, 1936.

Rehearing Denied Jan. 14, 1937.

D. T. Ware, of Roanoke, for appellants.

338

D. R. Boyd, of Roanoke, for appellee.

KNIGHT, Justice.

Bill by the wife to cancel mortgage upon her individual property, upon the ground that the indebtedness attempted to be secured was wholly the debt of the husband.

██ Section 8272 of the Code provides that "the wife shall not, directly or indirectly, become the surety for the husband." And it has been more than once said by this court that this statute is founded upon public policy which is to protect the wife's estate as against the influence of her husband, or her own inclination, in respect to subjecting it to her husband's debts. We may say further that this statute has been given a liberal construction by this court, and zealously applied for the accomplishment of its obvious purpose. Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Hanchey v. Powell, 171 Ala. 597, 55 So. 97; Corinth Bank & Trust Co. v. King, 182 Ala. 403, 62 So. 704; Staples v. City Bank & Trust Co., 194 Ala. 687, 70 So. 115; Street v. Alexander City Bank, 203 Ala. 97, 82 So. 111.

██ In dealing with such transactions, the courts regard substance, and disregard mere form. When the transaction is analyzed, if it discloses that the debt was in fact the debt of the husband, and not that of the wife, the courts will not permit form, or device, or any kind of concealment, to stand in the way of relief.

██ The sole question presented by this appeal is, Was the debt attempted to be secured by the mortgage of Mrs. Noel and her husband to the appellee, Tucker, the debt of the husband or the debt of the wife? If it was in fact the debt of the

husband, the mortgage is null and void, and the court committed error in denying the relief prayed for by Mrs. Noel. Authorities supra.

██ We have with great care read and considered all the evidence in the record, and, as a result, we have reached an entirely different conclusion from that reached by the trial court. Let it be here noted that the testimony was not given orally before the court, but was taken by deposition.

Upon the hearing of the cause the testimony noted consisted of the depositions of Mr. and Mrs. Noel, and that of the mortgagee-respondent.

The mortgagors each testified that the husband, A. R. Noel, borrowed of the respondent, Tucker, in 1909 $1,500; that this money was borrowed by the husband for the purpose of going into the furniture business, and it was so used. That such a loan was made by Tucker to the said A. R. Noel the evidence leaves no room to doubt.

It further appears from the evidence beyond any sort of doubt—real or imaginary —that, on October 1, 1910, or about that date, this indebtedness of the husband remained unpaid with $120 interest thereon, and it further appears that nothing was paid on this debt up to the time the mortgage in question was executed.

The mortgagors both testified that the mortgage on Mrs. Noel's lot was executed to said Tucker to secure said indebtedness, and that there was no other consideration for said mortgage.

Mr. Tucker, the mortgagee, testified that the true consideration of the mortgage was a presently made loan to Mrs. Noel in the amount stated in the mortgage, less 8 per cent. interest included in the face of the debt, and to accrue thereon between the date of the mortgage and its maturity; that at that time the husband owed him nothing. He specifically denied that he had made any loan to the husband in 1909, *or at any other time.* To quote from his testimony, at this point: "I did not lend A. R. Noel $1,500.00 on or about October 1, 1909. I have never loaned Mr. A. R. Noel *any amount at all,* I knew about Mr. Noel being in business with Griffin and Satterwhite. A. R. Noel has never said anything to me about borrowing money to invest in such business or even borrowing money for himself *on any occasion.* * * * The mortgage was ex-

ecuted and delivered to me as security for the loan that I then and there advanced Elizabeth Noel. *At that time neither A. R. Noel nor Elizabeth Noel owed me anything as a pre-existing debt.*" (Italics supplied.) The evidence on this point is so overwhelming in its character as to impress the judicial mind that in the above statements Mr. Tucker, to say the least it, had a very faulty and inaccurate nory. We are fully impressed that the ? facts are just to the contrary.

To demonstrate the inaccuracy of the above statements, we need only to quote the words of Mr. Tucker in his letter to Mrs. Noel under date of March 30, 1915, written at a time when the securing of the mortgage in question was uppermost in Mr. Tucker's mind:

"LaFayette, Ala.
"March 30th, 1915.
"Dear Bettie:

"Your letter received a few days ago glad to here from you in regard to the paper you spoke of that Asie had left at the bank. I went to the bank for it this morning and found Asie had gotten it, so I could not have it fixed up here. So you and him can have done at home and send back to me and I can return the old to him when you have the mortgage fixed up. Each of you will have to sign it in present of a justice of peace. I have been in bed for ten days with grip but am up today, but do not feel very well on a/c of this east wind and rain. All the rest well as usual. Think you might come down to see us sometime, be glad to see you all any time. Below I am sending amt. of note. Due October 11the 1910 $1620.00 the interest and principle on new paper and due October 1, 1915, is $2268.00 so you see interest amounts to some little in five or six years if not convenient for you all to have the paper fixt there you can send me the deed and I can have fixt here and return for your and Asies signature. Lots of love to you both.

"Your aff. Uncle John."

Mr. Tucker admitted that he wrote this letter. He had testified that he had loaned this money to Mrs. Noel to pay off a mortgage on her home. The evidence shows that there was no such mortgage.

With reference to the above letter, Mr. Tucker testified on cross-examination:

"I really don't remember what the note that I was writing about that would be due October 1, 1915. I was just trying to get it in my head.

"No one was present at the time I agreed to lend Mrs. Noel the money except Mr. Noel came up while we were talking.

"After refreshing my recollection I can't remember what note it was due October 1, 1910, in the amount of $1620.00 that interest ran on for five or six years and that I wrote to the complainant Bettie Noel about. After refreshing my recollection I just can't remember what I had on my mind when I wrote the letter to the complainant under date of March 20, 1915. * * * The letter that I wrote marked 'Exhibit B' shows that they did owe me before the mortgage 'Exhibit A' was executed but I can't remember anything about it."

It should also be stated that Mr. Tucker testified that he paid the money to Mrs. Noel by check, naming the bank upon which it was drawn, but he failed to produce the canceled check on demand of the complainant. We are fully persuaded that he did not produce it for the all-sufficient reason that there was no such check.

We are at the conclusion that the debt secured by the mortgage was the debt contracted in 1909 by the husband, and that no part of it was the debt of Mrs. Noel, and that the court erred in not granting relief to the complainant as prayed, and, consequently, erred in decreeing foreclosure of the mortgage under the cross-bill filed by Tucker.

The decree appealed from will accordingly be reversed, and one here entered cancelling the mortgage as prayed for in complainant's bill, and also dismissing the cross-bill filed by the said John M. Tucker.

Let the appellee, the said John M. Tucker, pay the cost of this appeal, as well as all cost in the court below.

Reversed and rendered.

ANDERSON, C. J., and THOMAS, and BROWN, JJ., concur.