18 So.2d 267

### SANSOM et al. v. STURKIE.

### 7 Div. 758.

Supreme Court of Alabama.

May 11, 1944.

Dortch, Allen & Swann, of Gadsden, for appellee.

Motley & Motley, of Gadsden, for appellants.

516

THOMAS, Justice.

Bill by a wife for cancellation or redemption of mortgages given by her and her husband on their home.

The pleading is to effect that the wife was the owner of the land described in the mortgage and that prior to April 7, 1916, complainant's husband negotiated a loan thereon of $800 from respondent H. D. Sturkie, and, to secure the loan, executed with her husband the mortgage in question.

On May 27, 1940, complainant and her husband executed a joint mortgage and notes for $1619.25 with interest from date at eight per cent to secure the amount due on the first mortgage. Respondent foreclosed the last mortgage, under its power of sale, and became the purchaser for the sum of $2500.

By amendment the original complainant made her husband a party complainant, and averred that the foreclosure indicated was void under the provisions contained in the mortgage, authorizing foreclosure by posting a written publication of the time, place and terms of sale at the court house door and two other public places in the county, by reason of the fact that the written notice was only posted at the court house door, and not at two other public places.

It is further averred that these mortgages were given to secure the debt of her husband with which she had no connection, and for which she became liable only as surety, in contravention of the provisions of Code 1923, § 8272, Code 1940, Tit. 34, § 74.

The foregoing averments were denied by respondent Sturkie and admitted by the complainant Joe Sansom.

The case being at issue, the taking of the evidence for complainant was concluded by the testimony of Mr. and Mrs. Sansom. When the bill was filed, respondent Sturkie was ill, and his death was suggested to the court. Revivor was had against his personal representative who became a party respondent.

A motion was made by respondent Sturkie to suppress the testimony theretofore taken on several grounds, towit: (1) That the bill had been materially amended by the addition of Joe P. Sansom as a party complainant; (2) that Zada C. Sturkie as executrix of the last will and testament of H. D. Sturkie had been made a party respondent; and (3) "Said testimony was taken for the purpose of evading the provisions of Section 7721 of the 1923 Code of Alabama, Code 1940, Tit. 7, § 433, the party, H. D. Sturkie, against whom said testimony was taken was *then* upon his death bed, and the witness Joe P. Sansom being interested in the result of the suit adversely to said Sturkie and the matters testified about being transactions between the witness and said H. D. Sturkie, who died shortly after such testimony was taken and without any opportunity to rebut the same." [Italics supplied.]

■ There was an agreement of counsel that the motions be later disposed of by the trial court which does not appear to have been done. This was not necessary under the Act of the Legislature of 1943, p. 105, Code 1940, Tit. 7, § 372(1); Qualls v. Monroe County Bank, 229 Ala. 315, 156 So. 846. Under the statute, the test as to transactions with deceased persons is that, "in case the witness testified falsely, the de-

ceased, if living, could contradict it of his own knowledge." Sherrill v. Wilhelm, 182 N.C. 673, 110 S.E. 95, 96; Warten v. Black, 195 Ala. 93, 70 So. 758; Delony v. O'Reilly, 235 Ala. 386, 179 So. 207; Williams v. Dent, 233 Ala. 109, 170 So. 202.

In Qualls v. Monroe County Bank, 229 Ala. 315, 156 So. 846, 847, it is stated on many authorities that the well-defined purpose of the statute is "to seal the lips of living parties where death has sealed the lips of others. Both negative and affirmative testimony are within the rule." 117 A.L.R. 609.

In Wesson v. Taylor, 240 Ala. 284, 198 So. 848, 850, the rule as to the class of negative evidence indicated is stated as follows:

"Negative evidence of this character, while throwing some side-light on the transaction involved in the suit, is held admissible, and not within the inhibition of Code, § 7721.

"The statute excludes testimony touching facts coming to the knowledge of the witness through transactions with or statements by the deceased. * * *"

This rule was followed on the second appeal. 242 Ala. 340, 6 So.2d 10.

In Smith v. American Nat. Bank, 229 Ala. 303, 156 So. 856, 857, it is declared: "The note purports on its face a joint obligation of the wife and husband, and therefore a prima facie case of joint and several liability is established. The burden of proof, therefore, rests upon the wife to establish the contrary. * * *"

■ When the debt is for the joint obligation of the husband and wife, it is void only so far as it was security for the husband's debt. Daniel v. Cummings, 231 Ala. 509, 165 So. 756; Davis v. Elba Bank & Trust Co., 216 Ala. 632, 114 So. 211. And in Marbury Lumber Co. v. Woolfolk, 186 Ala. 254, 258, 65 So. 43, 45, it is declared that the wife, in a proper case, may be bound by the agency of the husband, if he is acting for her.

■ Recent authorities are to the further effect that where the mortgage recites the debt of the wife, the recital is prima facie true and casts the burden on the wife to show it was given merely as surety of her husband, and to overcome the presumption, the evidence must be clear and convincing. Stroup v. International Life Ins. Co., 218 Ala. 382, 118 So. 752; Hard v. American Trust & Saving Bank, 200 Ala.

264, 76 So. 30. In such cases the court looks through the form to the substance to determine the true facts. Ware v. Hamilton Brown Shoe Co., 92 Ala. 145, 9 So. 136; Ware v. Seasongood, etc., 92 Ala. 152, 9 So. 138. And the materiality and competency of the evidence is to be judged as of the date of the trial and judgment. Sisson et al. v. Swift, 243 Ala. 289, 9 So.2d 891.

The decree of the court is rested as to the matter of suretyship on the testimony of the mortgagors without the testimony of the mortgagee, who was suffering from illness, and was never physically able to testify before his death. The original book accounts were in evidence. From the time the mortgages were made the account was kept in the name of "Mattie L. and Joe P. Sansom." Respondent offered in evidence the mortgagee's book accounts and bills receivable touching the transactions with complainants.

The husband testified on direct examination that he approached Mr. Sturkie some time prior to April 7, 1916, the date of the first mortgage, about a loan of $800.00 for himself, and with which his wife had no connection. In the first part of his testimony, J. P. Sansom stated that something was mentioned about a mortgage and that when he went back on a later day, Mr. Sturkie had the papers filled out and he took them out with a Notary Public for execution. Although the mortgage and notes both indicate that Mattie Sansom must have been considered by Mr. Sturkie as the principal debtor insofar as the mortgage was concerned, J. P. Sansom denied that his wife's name was mentioned during the transaction with Sturkie. However, she signed each document first and it is recited as the joint debt of the mortgagors and makers.

It is unquestioned that the loan was for the purpose of erecting a house on the property described in the bill of complaint which was within sight of where he and his wife lived.

Mattie L. Sansom, on direct examination testified that she had no knowledge of what her husband proposed to do with the money until a few weeks prior to her testimony and that the money was not borrowed on her behalf and she was merely acting as surety for her husband.

On cross-examination of J. P. Sansom it was developed, without dispute, that on March 1st, 1910, and prior to his marriage

to Mattie L. Sansom, he purchased from H. D. Sturkie what is known as the Cherry Street or Steve Hood lot for $2,000, the entire consideration being evidenced by mortgage payable at the rate of $25 per month. That J. P. Sansom and Mattie L. Sansom, whom he later married, conveyed the same to W. S. Hood on January 25, 1916, for $2,500, and continued to live on the property until the house erected from the proceeds of the Sturkie loan was completed when they moved therein. The Hood sale was handled through Mr. Sturkie and after paying off the mortgage given to secure the purchase price of the lot they sold to Hood, Sansom had a balance of $654.07 left to his credit with Sturkie, which amount was paid over to him by Mr. Sturkie on February 21, 1916. It was further developed that on February 28, 1916, one week from the day of the above transaction, Mattie L. Sansom purchased the property in question from Osa P. Smith and wife Berdie J. Smith, for the sum of $600 cash.

During this time, Sansom testified he was working for the A. B. & C. Railroad at a salary of $60 or $70 per month and that he started the house with some of the money he had saved. The erection of the house was begun very shortly after the lot was purchased and about two weeks prior to the negotiation of the Sturkie loan.

On cross-examination, Mattie L. Sansom testified that she had nothing to do with the erection of the house on her lot and that its erection was never discussed with her, although it was being erected on her property within sight of the house where she was then living, and she would go to see it after workmen were done with the day's work. That she paid for the Smith lot with $600 she had on deposit in the Etowah Trust & Savings Bank. In reply to this respondent offered D. C. Wadsworth, the President of the American National Bank (successor to Etowah Trust & Savings Bank), who testified without contradiction that Mrs. Sansom had no account in the Etowah Trust & Savings Bank at any time during the year 1916, and that in January and February of this year J. P. Sansom only had a balance of $1.23 in said bank.

Mrs. Sansom further testified that although she had lived in the house continuously since its completion in 1916, she did not know of the purpose of the Sturkie loan until a few weeks before she testified when she was informed by attorney of the rule as to a wife's suretyship for her husband.

The record of the Mattie L. Sansom and J. P. Sansom account kept by Mr. Sturkie shows that on April 10, 1916, the account was opened in the name of Mattie L. & Joe P. Sansom with a credit of "800.00, this credit being derived from the proceeds of the first mortgage, and that the same was closed out June 7, 1916, with an overpayment of sixty-five cents."

It is unquestioned that the rate of interest usually charged by Mr. Sturkie in 1916 was from six to eight per cent and the records of the Sansom account show that this was the rate charged on Mr. Sturkie's books for this loan secured by the foreclosed mortgage.

It is also unquestioned that after the foreclosure of the second mortgage, Mr. Sturkie paid a total of $217 due on a paving assessment against the property involved in this suit, and also paid for fire insurance and taxes for the years 1933, 1936, 1939, 1940 and 1941.

The undisputed evidence also discloses that $800 or $900 was a reasonable cost for the erection of a house comparable to the Sansom house in 1916.

█ The rule as to disaffirmance of a due mortgage foreclosure under the terms contained in such instrument was recently stated in Sherrill v. Federal Land Bank of N. O., 244 Ala. 461, 14 So.2d 361. It is to the effect that in the absence of unusual circumstances, the right to disaffirm a mortgage foreclosure sale is barred by the lapse of two years from the date of the sale. Dewberry v. Bank of Standing Rock, 227 Ala. 484, 150 So. 463. The instant foreclosure was of date of February 12, 1939. The bill was filed on February 25, 1939, which is within the time.

We will consider the averment that the mortgage was foreclosed by posting only at the courthouse door and not at two other public places as required. This averment was not sustained by the testimony. So of complainant's charge of usury.

█ The testimony was taken before the register. The provisions of Code 1940, Tit. 13, § 17, touching the appellate jurisdiction of this court, are that in deciding appeals from the circuit court in equity on the testimony, not given ore tenus, before the trial court, no weight shall be given the decision of the circuit judge upon the facts, but the court shall weigh the evidence and give judgment as they deem just. Fannin

v. Trotter, 215 Ala. 17, 109 So. 102; Cavin v. Cavin, 237 Ala. 185, 185 So. 741; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624. We will later advert to the recent change in the statute touching the fact that decisions in equity will be referred to the legal evidence. General Acts 1943, p. 105, Code 1940, Tit. 7, § 372(1).

There are many cases in this jurisdiction construing the statute invoked by complainant's pleading as to suretyship. Each case must stand upon its own facts and be judged by the competent evidence at the time of submission. One of the early cases is Hanchey v. Powell, 171 Ala. 597, 55 So. 97. There is a material difference involved as to the agency of the husband for the wife shown in the instant case. In the last cited case, Judge Anderson said, speaking for the court in affirmance of the decree, that "The testimony of the respondent shows that the lumber was sold to the husband, and while he knew the wife owned the land, and it was to be used for her benefit, he looked only to the husband for the payment of same. He did not sell it to the wife, or to the husband as her agent, but to the husband individually, who was to pay the debt with money he was going to get from Babe Powell, * * *."

There are many cases that are distinguished from the facts before us. For example, in Warren v. Crow, 198 Ala. 670, 73 So. 989, the wife as well as the husband applied to the mortgagee for the loan which was "made direct to them." Forlines v. Paulk, 243 Ala. 516, 10 So.2d 864, the loan was considered a gift by the wife of future credits for the conduct of a new business and within the rule of Bell v. Farmers' Nat. Bank, 214 Ala. 211, 106 So. 851; Citizens Bank of Moulton v. Burks, 242 Ala. 465, 6 So.2d 597. In Bradley v. Bentley, 232 Ala. 114, 167 So. 294, suretyship is defined under the statutes and the recent cases of the rule of the proof declared. See also Trotter Bros. v. Downs, 200 Ala. 158, 75 So. 906; Continental Life Ins. Co. v. Brandt, 228 Ala. 570, 154 So. 903; Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663; Ex parte Lacy, 232 Ala. 525, 168 So. 554 (an indirect suretyship of wife for husband within the statute defined). In Delony v. O'Reilly, 235 Ala. 386, 387, 179 So. 207, the debt was the husband's and the account was opened in the name of the wife without her knowledge.

The question of agency or trusteeship of the husband for the wife and her ratification of his acts, with full knowledge and consent, is adverted to in Wilson v. Andalusia Mfg. Co., 195 Ala. 477, 70 So. 140, 4 A.L.R. 1016; Wadsworth v. Hodge, 88 Ala. 500, 7 So. 194; Turner v. Rhodes, 22 Ala.App. 426, 116 So. 412; Griffin Lumber Co. v. O'Gara, 230 Ala. 267, 160 So. 685 and many authorities; Herrin v. Burnett, 217 Ala. 23, 114 So. 406; Rollings v. Gunter et ux., 211 Ala. 671, 101 So. 446; Noel v. Tucker, 233 Ala. 337, 171 So. 640. Such are the facts where the legal evidence before us is considered.

Where the question of fact is to be reviewed in this court touching the decree of the circuit court on evidence taken before the register and not given ore tenus before the trial court, the finding of the register is practically de novo in this court. Cavin v. Cavin, 237 Ala. 185, 185 So. 741; Watt v. Lee, 238 Ala. 451, 191 So. 628; Pollard v. Simpson, 240 Ala. 401, 199 So. 560.

The question recurs: To whom was credit given secured by the mortgage exhibited and foreclosed in 1939? The answer is affected by the agency of the husband for the wife in buying the Smith lot in her name and in building the house thereon in sight of their former home on the Hood lot. It is held that the fact of suretyship is not tested alone by the benefits accruing to the wife and her family. However this may be considered with other competent evidence, looking through form to ascertain whether the transaction and debt was that of the husband, the wife, or the agency of the husband for the wife, or a joint debt of husband and wife.

It is unfortunate that the death of mortgagee occurred while the evidence was being taken and after complainants had testified, preventing respondent from giving his version of the dealing with the parties. The competency of evidence is judged as of the date of final submission. Book accounts of Mr. Sturkie and the mortgage in evidence are illuminating as to the true status of his dealings with Mr. Sansom before his marriage and after that time. They show that Sansom gave Mr. Sturkie a mortgage before his marriage on another lot for $1293.75, and carried it to 1915 as a residence for himself and family when he sold to Mr. Hood. This individual transaction was fully closed as the bills receivable show. From this transaction came funds with which the second lot and

home were secured to the wife. In the later transaction Mr. Sturkie carried the account in the name of Mattie L. and J. P. Sansom, and likewise the notes and mortgage in question were signed by both complainants. On February 21, 1916, the mortgagee gave J. P. Sansom his check for $654.07, after having credited him on February 15th with "sale of property to Hood for $2500.00." The personal account of the husband was thus closed and disclosed the source of the money with which the Smith lot was purchased.

Looking further to the exhibits, we note that on February 28, 1916, Smith conveyed to Mattie L. Sansom, for a recited consideration, of $600 cash, the lot on which the house in question was erected. The evidence clearly shows that at such time neither of the Sansoms had $600, other than the money made out of the sale of the Smith lot to Hood. Sansom's purchase of the lot in his wife's name was with money obtained from Sturkie or Hood. His actions as to the lot mortgaged for the wife amounted to an agency for the wife as the grantee. Gandy v. Hagler, ante, p. 167, 16 So.2d 305.

That the mortgagee [Sturkie] regarded the transactions as those by an agent for the wife, in securing a home for her and family, is evidenced further by the book account of the many transactions carried in the name of both mortgagors. The further exhibits in evidence carried the account in the name of the wife and the husband at the time of the renewal mortgage and embraced items of debt, including interest, insurance, taxes and paving assessment on the property in question. The taxes were assessed against the wife. It was listed by her, her husband, or by another party indicated as acting for the wife.

The final decree of August 9, 1943, was after the Code of 1940 became effective on May 31, 1941, which omitted Section 6565 of the Code of 1923, effecting its repeal. Askins v. State ex rel. Johnson, 244 Ala. 455, 14 So.2d 156. This statute was, however, reenacted by the legislature of 1943, p. 105, approved on June 8, 1943, (Code 1940, Tit. 7, § 372(1) before the submission on August 5, 1943, for final decree. In the rendition of the instant decree the trial court, sitting in equity, was not required to pass upon the motion to exclude the illegal evidence of the complain-

ants Sansoms, but was under the statute confined to consideration of such testimony before him as was relevant, material, competent and legal, as to the transactions with the deceased by complainants as to the matters pertinent to this decision.

Regarding only the legal evidence before the trial court, we are of opinion that the trial court was without error in holding that the husband was acting for the wife in buying the lot, in building the house, in procuring funds and in having mortgagee pay for material and labor on the order of Mr. Sansom. After the house was completed in 1915 or 1916 the Sansoms lived therein to 1939, and as indicated, gave it in for taxes as that of the mortgagor wife; allowed the mortgagee to pay the taxes, insurance and paving assessments thereon, as also indicated. This construction of the house and occupancy began on or before April 7, 1916, extended to the date of the renewal mortgage on May 31, 1930, and to its due foreclosure and purchase by mortgagee for $2500 on February 13, 1939. In all this there was a ratification and approval by the wife of the agency of the husband in her behalf. Thus the facts in this case are different from those on which the decision was rested in Hanchey v. Powell, supra. But it may be observed in passing that the complainants admitted during the time from 1916 to 1939 and a short while before the instant bill was filed that they had not questioned the validity of the mortgages on the ground of suretyship. The complainants stated that the mortgagee had been helpful to them in their transactions touching these real properties; and after the foreclosure they were advised of the defense of suretyship of the wife for the husband's debts under the statute and hence the instant bill was filed.

A court of conscience will not, after such approval and ratification by the wife of the husband's agency, permit a repudiation of the foreclosed mortgage, under the circumstances shown by the record after Mr. Sturkie's death and inability to testify to the true facts. Code 1940, Tit. 7, § 433.

Under rules governing a court of conscience [10 Am.Juris. p. 39] and obtaining under our decisions [21 C.J., pp. 47, 212, 435, §§ 23, 212, 469; 30 C.J.S., Equity, §§ 24, 113, 270; Meeks v. Meeks, Ala.Sup., 18 So.2d 260;[1] Thompson v. Suttle, 244

---

[1] Post, p. 559.

Ala. 687, 15 So.2d 590], no other just decree could have been rendered than the one entered by the circuit court in equity from which the present appeal is prosecuted.

The decree of the circuit court is affirmed.

Affirmed.

GARDNER, C. J., and LIVINGSTON and STAKELY, JJ., concur.

