43 So.2d 392

CRUM v. CRUM et al.

3 Div. 536.

Supreme Court of Alabama.

Dec. 15, 1949.

Rogers & Rogers, of Greenville, for appellant.

Powell & Hamilton and Calvin Poole, of Greenville, for appellees.

STAKELY, Justice.

J. W. Crum died intestate on October 7, 1947, being killed in an automobile accident. He was a resident of Butler County at the time of his death and left surviving him his widow Mattie Irene Crum and ten sons and daughters namely: Ima Crum Nixon, J. B. Crum, Bertha Rea Horton, W. E. (Earl) Crum, Rachel Crum

Jones, Velma Lee Crum Ryland, Effie Mae Crum Harris, Jesse Leon Crum, Elmer Heral Crum and Charles Roland Crum. The three children last named are minors. The widow Mattie Irene Crum was appointed administratrix of the estate by the Probate Court of Butler County, Alabama, on October 14, 1947. The estate consisted of a sawmill which had been operated at McKenzie, Alabama but which had been closed for some months preceding the death of the decedent, together with certain real estate, lumber and timber rights and other property. J. W. Crum had been operating the sawmill business under the name of J. W. Crum Sawmill Company.

The oldest son J. B. Crum claims that on or about July 1, 1942, his father sold him a ⅕th interest in the sawmill business and property pertaining thereto and that he owned this interest at the time of his father's death. He claims under an instrument purported to be executed July 1, 1942, conveying to him an undivided ⅕th interest in the J. W. Crum Sawmill Company and all appurtenances thereto belonging including all machinery, tractors, trucks, lumber on hand, timber in the woods and all properties of any nature whatsoever and wheresoever located, except a certain tract of timber in Conecuh County, Alabama. The consideration expressed in the instrument is $6,000. This document is not acknowledged but purports to have been sworn to and subscribed before T. W. Wilson, Notary Public.

On February 6, 1948, J. B. Crum (appellant) filed a bill of complaint in the Circuit Court of Butler County, in Equity, against Mattie Irene Crum, individually and as executrix, and also against the aforesaid heirs of J. W. Crum, deceased (appellees), setting up the sale and conveyance to him by his father of an undivided ⅕th interest in the sawmill business of J. W. Crum Sawmill Company and all appurtenances thereto belonging as we have set forth, averring that on the day of the sale of the fifth interest a partnership was formed between J. W. Crum, deceased, and himself by which he was to receive ⅕th of all profits from the business of J. W. Crum Sawmill Company and to

bear ⅕th of all losses, if any, and J. W. Crum was to receive ⅘th of all profits from the business and bear ⅘th of all losses, if any; that J. W. Crum was to manage and have control of the profits of the sawmill, sale of the lumber, keeping of the books of the company, making all payrolls, keeping all records and business transactions of the company and complainant J. B. Crum was to manage and control the cutting of the timber and the hauling of logs to the sawmill and was to be general manager of all affairs and business with reference to cutting of the timber and logging. It is averred that from the first day of July, 1942 to the death of J. W. Crum no division was made of the profits from the business but that all profits were left in the business for accumulation. It is further charged that Mattie Irene Crum, the administratrix, upon her appointment took charge of all the assets belonging to the partnership, had sold a large part of the partnership property and placed it to her account as administratrix. The bill prays for an accounting and settlement and for general relief.

The administratrix and the heirs answering the bill denied the partnership agreement and averred that the sawmill and lumber business had been and was at all times the sole property of J. W. Crum, deceased, that it was conducted by him as an individual and that no partnership ever existed between him and the complainant.

The cause was submitted for final decree on the aforesaid pleading and upon proof taken before a commissioner. A final decree was rendered by the court dismissing the bill of complaint. This appeal is from that decree.

The evidence is voluminous and at points is in dispute. It has been carefully considered but it is not practicable to set it out in all its details. Caples et al. v. Young et al., 206 Ala. 282, 89 So. 460. The alleged conveyance bearing date of July 1, 1942 purports to convey a fifth interest to J. B. Crum in the sawmill business owned by J. W. Crum. We shall discuss this transaction hereinafter at greater length. But for the present, taking this instrument,

which makes no reference to a partnership, with the other evidence in the case, we do not think that a partnership agreement between J. B. Crum and J. W. Crum has been shown. The principles of law governing partnerships are clear. To constitute a partnership inter sese there must be an agreement between the partners that each shall share in the profits and losses of the business. Unless there is an agreement to share both in profits and losses there can be no partnership inter sese. Stafford v. Sibley, 106 Ala. 189, 17 So. 324; Woodson v. Bumpers, 224 Ala. 390, 140 So. 766, 767. We do not think that the evidence shows any agreement between J. W. Crum and J. B. Crum to share in the profits of the business and there was no proof of an agreement to share in the losses. There is no testimony to show what proportion of the profits J. B. Crum was to receive and what proportion of the profits J. W. Crum was to receive. Nor was there any agreement to show what proportion of the losses was to be borne by J. B. Crum and what proportion was to be borne by J. W. Crum. Section 30, Title 43, Code of 1940 does not aid the case of appellant, because as pointed out in Woodson v. Bumpers, supra, the statute "merely states a rule of evidence" and unless there is an agreement to share profits, no agreement to share losses will be implied.

Besides there are other matters which tend to show no partnership. No books of accounts were kept showing the establishment of a partnership. There are no books showing either profits or losses or any records showing where dividends were paid out to partners. In fact practically no books were kept by J. W. Crum Sawmill Company either before or after the alleged establishment of the partnership. J. W. Crum had the sole, exclusive management of the business. Appellant appears to have had no voice in this management. He was simply an employee. His name was on the payroll and he drew his pay of $100 per month in the same manner as other employees. His social security tax was deducted just as it was deducted from the wages of other employees. His testimony shows that one Mat Majors had been the

former woods foreman in charge of logging and had given up the place because he had obtained a better job. The evidence tends to show that J. W. Crum simply employed J. B. Crum to take the place of Mat Majors who had quit. According to the testimony of Mat Majors, J. W. Crum stated that he had sold J. B. Crum a fifth interest and then stated, "he looks after the woods for me."

But under strong tendencies of the evidence the alleged conveyance was never intended to have or had any effect. The evidence tends to show that the purpose of the transaction was to keep J. B. Crum out of the military service and not to constitute J. B. Crum either a partner or to transfer any interest in the property to him. In fact according to tendencies of the evidence the instrument was never delivered. Without dispute it was in the possession of J. W. Crum at the time of his death.

According to appellant the trade he made with his father was that for $300 in cash, which he paid, and the note for $6,000 secured by the mortgage, he was to receive a fifth interest in the sawmill business known as J. W. Crum Sawmill Company. At the same time his father was to buy from him a truck and trailer for $1200 for which he was to receive $500 and to give a note secured by a mortgage on the truck and trailer for the balance of $700. According to appellant these transactions were evidenced by the four papers hereinafter referred to.

The testimony of Paul D. Hartley, an attorney, shows that about July 1, 1942 or shortly prior thereto at the request of J. W. Crum he prepared four papers which he described as follows. (1) A bill of sale dated July 1, 1942 from J. W. Crum to J. B. Crum, to which reference has already been made, (2) a mortgage from J. B. Crum and wife to J. W. Crum dated July 1, 1942 on an undivided one-fifth interest in the J. W. Crum Sawmill business. The mortgage shows that it was to secure a promissory note for $6,000, bearing even date with the mortgage, without interest, and being due and payable on demand. (3) Bill of sale from J. B. Crum to J. W. Crum for a Chevrolet truck and (4) mortgage by J. W. Crum for $700 bearing no interest, payable in installments of $100 each on the first day

of each month beginning August 1, 1942, as security for the Chevrolet truck, purporting to be conveyed by the aforesaid bill of sale of the Chevrolet truck.

According to the testimony of Mrs. J. B. Crum she was present when the papers were signed at the office of the notary public and the bill of sale or deed conveying the fifth interest in the business was delivered to her husband J. B. Crum who in turn gave it to her. According to her testimony she carried it home and put it away in her chifforobe but about six months after that J. W. Crum came to her home and got the document stating that he needed it for some purpose. According to the testimony of appellant he did not recall whether he was at home when his father came there asking for the papers. He did not remember whether he was there or not. The testimony on the part of the appellees shows that these four papers were kept together in the office of J. W. Crum up until after the death of J. W. Crum. These four papers including the mortgage for $6,000 were found in J. W. Crum's office after his death in a large book letter file by Mrs. Velma Ryland, a daughter of J. W. Crum, who was in charge of the office at her father's death. Tendencies of the evidence further show that these papers were carried away from the office that day by J. B. Crum and had never since been found. J. B. Crum admits taking the original instrument conveying the fifth interest at the time it was found in the office after his father's death but denies taking the $6,000 mortgage with him. Instead he testified that this mortgage was turned over to him by his father and marked paid either in the latter part of December, 1944 or the first part of January, 1945.

It will be recalled that the bill of complaint alleged that "from the 1st day of July, 1942, to the time of the death of J. W. Crum no division was made from the profits from said business but all profits were left in the said business for accumulation." On direct examination appellant testified that he never drew anything out of J. W. Crum Sawmill Company except a salary, that there was never any division as to profits from the company and that all profits and accumulations were kept in the company.

Appellant was paid a small salary barely sufficient to support himself and family. On his cross-examination, however, appellant testified that the entire mortgage debt for $6,000 was paid out of his salary and profits. It is not claimed nor is there any proof that the indebtedness secured by the mortgage was paid in any other manner. Tendencies of evidence showed that J. W. Crum had to borrow $18,000 to rebuild on account of a fire. Tendencies of evidence further showed that the business was not making money in 1943 and money had to be borrowed in order to carry on the business. Tendencies of evidence showed further that the business was not making money in 1945 or at any time thereafter.

Although according to the testimony of J. B. Crum the mortgage was delivered to him, he was never able to find it. It was not produced as evidence. Appellant produced no receipts or other documents showing that he had made any payment of the mortgage indebtedness.

The foregoing testimony is contrary to the testimony of witnesses to the effect that they saw this mortgage in the office of J. W. Crum along with the instrument conveying the fifth interest. One witness testified that he saw appellant put these papers in his pocket and carry them away from the office with him. It does not seem reasonable that if J. W. Crum marked this mortgage paid and gave it to appellant in the latter part of December, 1944 or the first part of January, 1945 and delivered it to appellant, that it would be in the office of J. W. Crum where it was found a few days after his death. The testimony of appellant appears to be an effort not only to establish the conveyance as a valid instrument but at the same time to show that the indebtedness of $6,000 secured by the mortgage was paid. The result would be to show that he not only owned a fifth interest in his father's business but that his indebtedness to the estate had been paid, giving him an unincumbered fifth interest in his father's business in addition to his interest as an heir in all assets of the estate other than this fifth interest.

According to the proof none of the papers were recorded until J. B. Crum secured

the conveyance for the fifth interest after his father's death and had it recorded in the probate court.

We do not consider that the appellant has carried the burden of proof which rests upon him to establish a conveyance of the fifth interest in the business of his father. In view of the foregoing it is not necessary to consider the testimony in the record tending to show that whatever trade may have been made between appellant and his father it was later rescinded by mutual agreement and appellant became engaged in hauling on his own account with the truck and equipment which he received back from his father.

Before closing the opinion we should consider the effect of § 433, Title 7, Code of 1940 on the testimony in the case because a number of the sons and daughters of the decedent were witnesses for and against appellant and all had a pecuniary interest in the result of the case. J. B. Crum testified in his own behalf. Rachel Jones testified in behalf of appellant. Effie Mae Crum Harris, Velma Ryland and W. E. Crum testified in behalf of the respondents. All of this testimony was either with reference to transactions by the deceased or as to statements made by the deceased. Before the testimony in the case was taken, the parties made an agreement which was in effect in accordance with § 372(1), Title 7, Code of 1940, that it would not be required or necessary to make objection to any testimony or evidence which might be offered by either party and in consideration the court would consider only such testimony and evidence as is relevant, material, competent and legal, whether objection shall have been made thereto or not. Before the submission of the cause objections were made by the appellant to the competency of W. E. Crum as a witness. At no time was any objection made to the competency of any witness except W. E. Crum. In Warner v. Warner, 248 Ala. 556, 28 So.2d

701, 707, this court held that § 372(1), Title 7, Code of 1940, "does not relieve the parties from making specific objection to the competency of witnesses, and, therefore, does not save the waiver of the statutory rule." So omitting for the moment consideration of the testimony of W. E. Crum, we have considered the testimony of all the other foregoing witnesses so far as § 433, Title 7, Code of 1940 is concerned. The result of the rule laid down in Warner v. Warner, supra, however, is that where objection is made to the competency of the witness the usual rules of procedure obtain. In other words, where the competency of a witness is involved, § 372(1), Title 7, Code of 1940, has no application whatsoever.

As pointed out objections were made to the competency of W. E. Crum as a witness as to statements made by his deceased father because of his pecuniary interest in the result of the suit. These objections were filed before the submission of the cause and called to the attention of the court by being referred to in the complainants' note of testimony. Seals v. Robinson, 75 Ala. 363. See Rice & Wilson v. Tobias, 89 Ala. 214, 7 So. 765. However no ruling thereon was made by the court and there is no assignment of error in this regard. Hence we have considered the testimony of W. E. Crum. Lehman et al. v. Meyer et al., 67 Ala. 396; Halle v. Brooks, 209 Ala. 486, 96 So. 341. We add, however, that even if we did not consider the testimony of W. E. Crum, this would not change the result, since there is other evidence which is ample to sustain the action of the court. Meyer Bros. v. Mitchell, 75 Ala. 475; Samson et al. v. Sturkie, 245 Ala. 514, 18 So.2d 267.

We conclude that the court reached a correct conclusion in the case and the decree of the court is affirmed.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.