75 So.2d 620

### Mittie HARRISON

v.

### Benjamin F. HARRISON et al.

4 Div. 784.

Supreme Court of Alabama.

Oct. 7, 1954.

Rehearing Denied Nov. 4, 1954.

J. Hubert Farmer, Dotham, for appellant.

Archie I. Grubb, Eufaula, and Crews, Johnston, Clayton, for appellees.

650

CLAYTON, Justice.

This is an appeal from a decree of the Circuit Court of Barbour County, in Equity, disallowing a claim of Mrs. Mittie Harrison against the estate of Mrs. Lillie Harrison, deceased, in the course of the administration of said estate, which was transferred from the Probate Court on petition of Ben Harrison, one of the heirs at law of Mrs. Lillie Harrison, who was contestant below and appellee here.

Mrs. Lillie Harrison at her death, in February, 1952, owned and occupied a home on Broad Street in Eufaula. Living in the house with her for the last six years of her life was appellant, Mrs. Mittie Harrison, the widow of her deceased son, Mack Harrison, and her three children, who were teen aged at the death of their grandmother. Mrs. Mittie Harrison and the children continued to occupy the house after the death of Mrs. Lillie Harrison. In February, 1953, a year after the death of Mrs. Lillie Harrison, a bill was filed by some of her heirs seeking to sell the house and lot for division of proceeds of sale among the heirs. Mrs. Lillie Harrison left no estate other than the house and lot. Twelve days after the bill was filed, appellant filed her petition in the Probate Court of Barbour County and was appointed administratrix of the estate of Mrs. Lillie Harrison, deceased. On the day following her appointment, she filed a claim for $5,000 against the estate for groceries, cooking, maid service, coal, electricity, and personal services claimed to have been rendered to decedent during the last six years of her life. The claim was contested by Ben Harrison and other adult heirs. The administration was transferred to equity, where the contest was heard, re-

sulting in a decree disallowing the claim, from which claimant has appealed.

It is undisputed that Mrs. Lillie Harrison was 77 years old when she died, that she had some serious illness in 1948, during which she remained in bed a long time and required constant nursing. The testimony was conflicting as to her state of health after the illness and until her death four years later.

Testimony in support of the claim consisted of claimant's own statements, admitted over objection of contestants, giving details of the services she claimed to have rendered to decedent, such as buying, cooking and serving food to decedent and the alleged value of such services; amounts and costs of coal, electricity, and groceries claimed to have been furnished to decedent by claimant. Some of these statements went beyond the rules of admissibility under our decisions construing § 433 of Tit. 7, Code 1940, the so-called "dead man's" statute. See authorities collated in our recent case of Burnett v. Garrison, Ala., 75 So.2d 144 [1]; Box v. Box, 247 Ala. 291, 24 So.2d 28. See, also, Carlisle v. Carlisle, 260 Ala. 283, 70 So.2d 263; Redwine v. Jackson, 254 Ala. 564, 49 So. 2d 115; Cousins v. Crawford, 258 Ala. 590, 63 So.2d 670; Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674. But as the final decree denied the claim, no injury resulted from overruling the objections and motions to exclude the statements. However, on appeal, we consider only such part of her testimony as was relevant, material, competent and legal. § 372(1), Tit. 7, Code 1940, Pocket Part; Hyde v. Starnes, 247 Ala. 26, 22 So.2d 421; Sansom v. Sturkie, 245 Ala. 514, 18 So.2d 267; Redwine v. Jackson, supra; Cousins v. Crawford, supra; Haywood v. Hollingsworth, supra.

Mrs. Lottie Shehan, a neighbor, testified that on one occasion about a year before Mrs. Harrison's death, Mittie (the appellant), moved away from the home of Mrs. Harrison, and witness, at the request of Mrs. Harrison, went to Mittie and conveyed a message from Mrs. Harrison that

1. Ante, p. 622.

if Mittie would return and live with her, Mrs. Harrison would make a will leaving the house to her for her life. Mrs. Culverhouse, sister of appellant, testified that she heard Mrs. Harrison say she was going to leave what she had to Mittie. A number of neighbors and friends testified to the fact that Mittie was good to Mrs. Harrison and waited on her when she needed it. Max Brazzel, a grocer, testified to the size of appellant's grocery bill as being $80 to $100 per month.

For the contestants, appellees, three sons of Mrs. Harrison and their wives testified that Mrs. Harrison had more than enough income to support her, which consisted of a railroad pension check of $27 per month, rent on the upstairs part of her house, averaging about $15 per month, a welfare check varying from $14 to $21 per month for a good part of the time under consideration, and $5 to $7 average earnings per week from Oppenheimer's for alterations done by her on clothing all the time except the last year of her life. In addition, they testified that some of them regularly paid her water bill and furnished her with groceries, coal for her fireplace, and kerosene for her cook stove. They also testified that they nursed her during her illness in 1948, and that at other times she was in good health for her years and needed no waiting on or other care except during said illness. One of the sons and his wife lived in a house next door to the mother during all of the six years involved. They further testified that $35 to $40 per month would take care of her expenses, and that she had more than enough income to pay them.

A. Lockwood, a grocer, testified that he sent groceries to Mrs. Harrison on an average of twice a week on order of and paid for by Ben Harrison, appellee.

J. M. Barr, bookkeeper for Oppenheimer's, testified that Mrs. Harrison's income from alterations on clothing averaged from $5 to $7 per week.

Van Allison testified that she was the cook at Mrs. Harrison's house for the last 26 years of her life, that of her $7.50 weekly wages, $5 was paid by appellant and $2.50 by Mrs. Harrison; that both Mrs. Harrison and appellant bought groceries, and that they cooked and ate together.

■ The trial court disallowed the claim in its entirety. The decree was such a final judgment as will support an appeal. Tit. 61, § 216, Code 1940; Hyde v. Starnes, supra; Box v. Box, supra.

■■ The essential basis of appellant's claim is a contract, express or implied, between claimant and decedent. Box v. Box, supra, Duncan v. Johnson, 239 Ala. 183, 194 So. 528; Coleman v. Adkins, 232 Ala. 351, 168 So. 184; Lowery v. Pritchett, 204 Ala. 328, 85 So. 531. The burden of proof rests upon claimant to show such contract. Box v. Box, supra; O'Rear v. Kimbro, 227 Ala. 22, 148 So. 435; Patterson v. Carter, 147 Ala. 522, 41 So. 133.

■ In the instant case, we have the grandmother, the daughter-in-law, and the three small grandchildren living in the same house, cooking their food together, eating from the same table as one family for at least six years, until the death of the grandmother. The house was owned by the grandmother, and no rent was paid by the daughter-in-law. Clearly, any services rendered or things furnished by the daughter-in-law for the comfort and well-being of the grandmother of her children are presumed to be gratuitous. In our fairly recent case of Box v. Box, 247 Ala. 291, 24 So.2d 28, 31, supra, this court, speaking through the late lamented Justice Brown, said:

"'The courts regard with suspicion and disfavor claims brought against an estate for personal services rendered by relatives, especially where the latter are members of decedent's immediate family or household, as the presumption is that such services between persons occupying such relations are intended to be gratuitous, and hence claims against the estate of a decedent made by near relatives for personal services require stronger proof to establish them than ordinary

claims by strangers. The rule applies when the family relationship actually existed between claimant and decedent, although there was neither consanguinity, affinity, nor adoption.' 24 Corpus Juris, p. 281, § 881, 34 C.J.S., Executors and Administrators, § 371; Patterson .v. Carter, supra [147 Ala. 522, 41 So. 133].

"Such suspicion and disfavor may be overcome by clear and convincing competent evidence showing an expressed agreement by the decedent to pay or proof of facts showing an expectation on the part of the decedent at the time the services were rendered to pay for such services and such expectation on the part of the claimant at the time the services are rendered to receive such payment. Croft v. Croft, supra [219 Ala. 94, 121 So. 82]; Hyde v. Starnes, supra [247 Ala. 26, 22 So.2d 421]; Willingham v. Starnes et al., supra [247 Ala. 30, 22 So.2d 424]."

■ Disregarding illegal testimony, we have in the most favorable aspect of appellant's case a probable intention on the part of decedent to make a will leaving Mittie an estate for life in the house; but as to its sufficiency to support the claim which is the basis of this suit, we quote further from the Box case, supra:

"While the weight of the legal and competent evidence goes to show that the deceased contemplated making a will in which he probably intended to make said claimants beneficiaries, the evidence wholly fails to show that there was any expectation on the part of the deceased Edmondson that he would have to pay claimants for any or all of the items of said claims, or that claimants at the time the services were rendered expected to receive any other payment than the reciprocal benefits arising from the relationship of the parties, the use by claimants of Edmondson's property, * * *.

" 'While an express agreement need not be shown, there must be independent proof of facts from which an in-ference should be drawn that there was an expectation on the part of both parties to the transaction that such payment would be made. * * *' Croft v. Croft, 219 Ala. 94, 95, 121 So. 82, 83."

Also, in Patterson v. Carter, 147 Ala. 522, 524–525, 41 So. 133, Anderson, J., speaking for this court, held:

" * * * The evidence shows that the plaintiff to the judgment, Celia Patterson, was reared by the intestate and continued and lived with her until her death, and practically occupied the same relationship with the decedent, the latter years of her life, that she did for a number of years previous to her death. She performed certain services in and about the place and for the deceased, and in return received a maintenance and support at what was to all intents and purposes their common home. She was practically a part of the family of Mrs. Patterson, who stood in the relation of a parent, and the presumption is that no payment is expected for services rendered or support furnished by the one to the other. This presumption is not, however, conclusive, and may be overcome by proof either of an express agreement to pay or of such facts and circumstances as show satisfactorily that both parties at the time expected payment to be made. Whenever, therefore, compensation is claimed in any case by either parent or child against the other for services rendered, or the like, the question whether the claim should be allowed must be determined from the particular circumstances of the case. There can be no fixed rule governing all cases alike. In the absence of any direct proof of an express contract, the question which must be determined .is whether it can be reasonably inferred that pecuniary compensation was in the view of the parties at the time when the services were rendered or the support was furnished; and the solution of this question depends upon a consideration of all the circumstanc-

es of the case.' 21 Am. & Eng.Ency. Law, 1061. \* \* \*"

It is noteworthy that appellant's claim was not filed until more that a year after the death of Mrs. Lillie Harrison. This is a circumstance on which the trial court commented in his decree. In the Croft case, supra [219 Ala. 94, 121 So. 83], this court quoting Corpus Juris, stated:

" 'Long delay in presenting or prosecuting a claim creates a strong presumption against its validity particularly where the claim was not asserted in the life of the alleged debtor.' 24 C.J. 401."

■ The trial court saw the witnesses and heard their testimony ore tenus. According his holding that presumption of correctness which is due it, 1 Ala.Dig., Appeal and Error, 🕮 931, we are impelled to the conclusion that his decree is correct and should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.

On Motion for Rehearing

CLAYTON, Justice.

In deference to vigorous argument of counsel for appellant that we have in our original opinion ignored the cases of Butler v. Kent, 152 Ala. 594, 44 So. 863, and Moore v. Robinson, 214 Ala. 412, 108 So. 233, we here undertake to differentiate the instant case from them.

The case of Butler v. Kent, supra, was reversed on appeal for the refusal of the trial court to admit in evidence testimony of a disinterested witness relative to a parol agreement between claimant and his deceased father, whereby the father agreed that if the son would move from his own home to the home of the father and take care of the father and mother for the remaining portion of their lives, upon their deaths all property of the father would belong to the son. It was admitted that the parol agreement was barred by the statute of frauds but evidence of the agreement was offered in support of the son's claim on the quantum meruit. The holding in the case was that the testimony was admissible for that purpose, and the cause was reversed for the trial court's sustaining objection thereto. In the case at bar, testimony partially similar to the above was admitted but, the evidence being in conflict, the trial court found that the claimant had not carried the burden of establishing her claim.

■ In the case of Moore v. Robinson, supra, there was testimony from a disinterested witness that deceased had said "she wanted the plaintiff to have what she had when she died." The holding was that such testimony was properly admitted as tending to show that the deceased intended to compensate plaintiff and that plaintiff expected to be compensated for board and lodging furnished to deceased by plaintiff. In that case, the trial court gave judgment for the plaintiff and it was affirmed here. In the case at bar, the trial court admitted the plaintiff's evidence but gave judgment for the defendant. We are not asked to reverse for alleged error in the admission of testimony but appellant seeks reversal of the trial court's holding on the effect of the admitted testimony. Where the evidence is in conflict, the finding of the trial court has the effect of a jury verdict. It is here presumed to be correct. Ala.Dig., Appeal and Error, 🕮 931. We do not find the evidence sufficient to overcome such presumption.

Opinion extended. Application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON and STAKELY, JJ., concur.